## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WESTPORT INSURANCE CORPORATION,** | : | **CIVIL ACTION NO. 1:05-CV-1252** |
| | : | |
| | : | **(Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BLACK, DAVIS & SHUE AGENCY, INC.,** | : | |
| | : | |
| | : | |
| **Defendant** | : | |

### MEMORANDUM

This is an insurance declaratory judgment action filed by plaintiff Westport

Insurance Corporation ("Westport").  Westport seeks a declaration that it owes no

duty to defend or indemnify defendant Black, Davis & Shue Agency, Inc. ("BD&S")

in a civil action pending in the United States District Court for the Southern

District of New York.[1]  (See Doc. 3 at 1.)  Presently before the court are BD&S's

motion for partial judgment on the pleadings (Doc. 23) and Westport's motion for

summary judgment (Doc. 29).  The motions have been fully briefed and are ripe for

disposition.  For the reasons that follow, BD&S's motion for partial judgment on the

pleadings will be granted, and Westport's motion for summary judgment will be

denied.

---

[1]  The pending civil action is: Gregory V. Serio, Superintendent of Ins. of the
State of N.Y., as Rehabilitator of Frontier Ins. Co. v. Black, Davis & Shue Agency,
Inc., Civ. A. No. 05-CV-0015 (S.D.N.Y. Jan. 3, 2005) (hereinafter "the Frontier
action").

I.      **Statement of Facts**

The dispute in this case centers around a professional liability policy that

Westport issued to BD&S, an insurance brokerage company.[2]  (Doc. 3 ¶¶ 1-2;

Doc. 13 ¶¶ 1-2.)  The policy obligated Westport to "pay on behalf of [BD&S] 'loss' for

which [BD&S] is legally liable caused by a 'wrongful act' committed by [BD&S]

arising out of 'professional services' rendered to others."[3]  (Doc. 3, Ex. B at 61.)

BD&S claims that the policy imposed upon Westport a duty to defend and

indemnify BD&S in the Frontier action.  Westport filed the instant complaint for

declaratory relief, seeking a judicial declaration that it has no such duty to defend

or indemnify BD&S.  (Doc. 3 at 1.)  The court will provide a brief background of the

Frontier action before embarking on a discussion of Westport's claims in the above-

captioned action.

----

[2]  The policy was in effect from January 24, 2001 to January 24, 2002.  (Doc. 3 ¶ 15; Doc. 3, Ex. B.)

[3]  The key terms in this coverage explanation are defined as follows:

"Loss" means amounts payable by an insured in settlement of "claims" or in satisfaction of judgments or awards including punitive and multiple damages where permitted by law, if covered by the Insuring Agreement.

"Wrongful act" . . . means any negligent act, error, omission, or "personal injury" of an insured or any person for whose acts the insured is legally liable in rendering services for others.

"Professional Services" means activities as a general insurance agent, insurance agent, or insurance broker.

(Doc. 3, Ex. B at 65.)

## A.  The Frontier Action

Frontier is an insurance company that appointed BD&S to act as its agent "in the procuring and servicing of workers' compensation insurance" for members of a professional employer organization ("PEO").[4]  (Doc. 3 ¶ 5; Doc. 3, Ex. A ¶¶ 59-66.)  Pursuant to the agency arrangement, BD&S was to collect premiums, deduct a 10% commission, and remit the remainder to Frontier.  (Doc. 3 ¶ 6; Doc. 3, Ex. A ¶¶ 68-71.)  Frontier also entered into a reinsurance agreement with an offshore entity known as Congressional RE, which is owned in part by the principals of BD&S.  (Doc. 3 ¶ 7; Doc. 3, Ex. A ¶¶ 78-79.)  Pursuant to the reinsurance agreement, Frontier was to act as the "fronting" insurance company,[5] and Congressional RE

---

[4]  According to Westport,

A PEO assumes the administrative[,] personnel[,] and payroll responsibilities for the employees of its "client companies" including procuring worker's compensation insurance coverage for the employees.  The theory is that by negotiating on behalf of numerous companies, a PEO can secure better prices for its client companies than the client companies could secure on their own.

(Doc. 3 ¶ 5 n.1.)

[5]  A "fronting" insurance company is "[a]n insurer that issues policies with the intention of transferring most of the insured exposure through reinsurance or other means to unauthorized insurers or reinsurers or captive insurers."  RICHARD V. RUPP, RUPP'S INSURANCE & RISK MANAGEMENT GLOSSARY (2002), http://insurance.cch.com/rupps/fronting-company.htm.

was to act as the "captive" insurance company[6] for the workers' compensation

insurance policies issued to members of the PEO.  (Id.)  More specifically, Frontier

agreed to issue the policies in exchange for a fee to be deducted from the premiums

collected by BD&S, and Congressional RE agreed to reimburse Frontier for any

loss payments made under the policies in exchange for the balance of the

premiums.  (Doc. 3 ¶¶ 8-9; Doc. 3, Ex. A ¶ 83.)

On January 3, 2005, Frontier commenced a civil action against BD&S.

(Doc. 3 ¶ 4; Doc. 13 ¶ 4.)  In that action, Frontier seeks to recover millions of dollars

in premiums that BD&S allegedly refused to remit to Frontier.  (Doc. 3 ¶¶ 10-11, 18-

19; Doc. 3, Ex. A ¶¶ 165-166.)  Frontier alleges that BD&S improperly transferred

some of the premiums directly to Congressional RE, an organization in which one

or more of BD&S's principals "hold financial interests."  (Doc. 3 ¶ 12; Doc. 3, Ex. B

¶ 169.)  Frontier further alleges that BD&S engaged in a fraudulent scheme,

whereby it falsely represented to PEOs that it had secured them insurance coverage

and then collected premiums for the non-existent coverage.  (Doc. 3 ¶ 11 n.2; Doc. 3,

Ex. B ¶ 4 (stating that premiums were retained by BD&S employees "for their own

personal benefit")).

---

[6]  A "captive" insurance company is "[a] risk-financing method or form of
self-insurance involving the establishment of a subsidiary corporation or association
organized to write insurance.  Captives are domiciled either in a country outside the
United States or in one of the few U.S. states that authorize them.  Captive
insurance companies are formed to serve the insurance needs of the parent
organization and to escape uncertainties of commercial insurance availability and
cost."  RICHARD V. RUPP, RUPP'S INSURANCE & RISK MANAGEMENT GLOSSARY (2002),
http://insurance.cch.com/rupps/captive-insurance-company.htm.

### B.     The Above-Captioned Action

On June 21, 2005, Westport commenced the instant action.  (See Doc. 1.)

Westport argues that it has no duty to defend or indemnify BD&S in the Frontier

action because of the following four policy provisions:  (1) the funds exclusion,

(2) the intentional acts exclusion, (3) the personal profit exclusion, and (4) the other

insurance provision.  (Doc. 3 ¶¶ 17-34.)  On October 6, 2005, BD&S filed several

counterclaims, alleging breach of contract, statutory bad faith, and common law

bad faith.  (Doc. 13.)  By order of court dated December 2, 2005, BD&S's common

law bad faith counterclaim was dismissed because Pennsylvania does not recognize

such a cause of action.  (Doc. 19.)

BD&S timely filed a motion for partial judgment on the pleadings on January

5, 2006.  (Doc. 23 ¶ 4.)  BD&S's motion seeks a declaration that none of the policy

exclusions discussed above remove Westport's duty to defend.  (Id.)  On January 17,

2006, Westport filed a motion for summary judgment, seeking a declaration that it

owes no duty to defend or indemnify BD&S.[7]  (Doc. 29.)  Both motions have been

fully briefed and are ripe for disposition.

---

[7] Westport's motion also seeks dismissal of BD&S's remaining
counterclaims.  (Doc. 29 at 11.)  However, Westport presents no legal arguments in
support of the requested dismissal, so the court will deny Westport's motion with
respect to BD&S's counterclaims without further discussion.

## II.   Standard of Review

A motion for judgment on the pleadings is a procedural hybrid of a motion to dismiss and a motion for summary judgment.  Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  FED. R. CIV. P. 12(c).  To succeed on a motion under Rule 12(c), "the movant [must] clearly establish [ ] that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."  Hayes v. Cmty. Gen. Osteopathic Hosp., 940 F.2d 54, 56 (3d Cir. 1991); see also 5A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1368, at 519 (2d ed. 1990).  When deciding a motion for judgment on the pleadings, the court is directed to view "the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  Hayes, 940 F.2d at 56.

Like a motion for judgment on the pleadings, a summary judgment motion allows the court to dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  However, in contrast to a motion for judgment on the pleadings, a motion for summary judgment places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, Civil Action No. 1:03-CV-1112, 331 F. Supp. 2d 311, 315 (M.D. Pa. Aug. 16, 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This

evidence must be adequate, as a matter of law, to sustain a judgment in favor of the nonmoving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e).

While these standards of review have marked differences in most cases, they become synonymous in the context of declaratory judgment actions regarding an insurer's duty to defend.  In Pennsylvania, an insurer's duty to defend its insured in a lawsuit brought by a third party is "determined solely from the language of the complaint against the insured."  Kvaerner Metals Div. v. Commercial Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006); see also Coregis Ins. Co. v. Harrisburg, No. 1:03-CV-920, 2006 WL 860710, *4 (M.D. Pa. Mar. 30, 2006) ("Under Pennsylvania law, the question of whether an insurance company has a duty to defend is determined by comparing the allegations contained *within the four corners of the underlying complaint* against the terms and conditions of the insurance policy at issue." (emphasis added)); Wilson v. Md. Cas. Co., 105 A.2d 304 (Pa. 1954) ("The obligation to defend is determined *solely* by the allegations of the complaint in the action." (emphasis added)); Scopel v. Donegal Mut. Ins. Co., 698 A.2d 602, 607 (Pa. Super. Ct. 1997) (rejecting the plaintiff's attempt to use "factual averments contained in discovery evidence but not reflected in the complaint itself" to establish a duty to defend).  Because no extrinsic evidence is permitted, the nonmoving party's burden to produce affirmative evidence in support of its right to relief in the context of a summary judgment motion is removed.  Therefore, the court may treat a motion for

judgment on the pleadings and a motion for summary judgment together by focusing solely on the facts as alleged in the underlying complaint.

**III.   <u>Discussion</u>**[8]

The duty to defend attaches when the allegations of the complaint against the insured "may potentially come within the policy's coverage." <u>Allstate Ins. Co. v. Drumheller</u>, 185 F. App'x 152, 154 n.2 (3d Cir. 2006) (citing <u>Gedeon v. State Farm Mut. Auto Ins. Co.</u>, 188 A.2d 320, 321-22 (Pa. 1963)).  Even where only "a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover" on the covered claim.  <u>Penn Nat'l Ins. v. HNI Corp.</u>, No. 1:05-CV-2096, 2007 WL 1175636, *37 (M.D. Pa. Apr. 20, 2007) (quoting <u>Frog, Switch & Mfg. Co. v. Travelers Ins. Co.</u>, 193 F.3d 742, 746 (3d Cir. 1999)).  Conversely, the insurer bears no duty to defend if the insurer can confine the complaint to "recovery that is not within the scope of the coverage." <u>USX Corp. v. Liberty Mut. Ins. Co.</u>, 444 F.3d 192, 202 n.18 (3d Cir. 2006).

The duty to defend is broader than the duty to indemnify.  <u>Kvaerner</u>, 908 A.2d at 896 n.7; <u>see also</u> <u>Sikirica</u>, 416 F.3d at 225.  The Third Circuit has stated:

---

[8] Jurisdiction over the instant action is based on diversity of citizenship, <u>see</u> 28 U.S.C. § 1332, and neither party disputes the applicability of Pennsylvania law to plaintiffs' claims, <u>see</u> <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 79-80 (1938); <u>see also</u> <u>Borse v. Pierce Goods Shop, Inc.</u>, 963 F.2d 611, 613 (3d Cir 1992) (federal courts sitting in diversity must apply the substantive law of the forum state).

Whereas the duty to defend arises whenever the complaint filed by the
injured party may fall within the scope of the policy's coverage, the duty to
indemnify is more limited because it arises only if it is established that the
insured's damages are actually covered by the terms of the policy.

Drumheller, 185 F. App'x at 154.

To determine whether an insurer has a duty to defend an insured, the court

must engage in the following two-step process.  First, the court must "determine the

scope of coverage under the insurance policy itself."  Drumheller, 185 F. App'x at

154 n.2.  This question is "independent of, and antecedent to" the issue of the

insurer's duty to defend.  Lucker Mfg. v. Home Ins. Co., 223 F.3d 808, 814 (3d Cir.

1994) (citing Erie Ins. Exch. v. Transamerica Ins. Co., 533 A.2d 1363, 1368 (Pa.

1987)).  Second, the court must "ascertain whether the complaint against the

insured states a claim that is potentially covered under the policy."  Drumheller, 185

F. App'x at 154 n.2.  If the court determines that the complaint "avers facts that

might support recovery under the policy, coverage is triggered and the insurer has

a duty to defend."  Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 226 (3d Cir. 2005)

(citing Gen. Accident Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997)).

"Traditional principles of insurance policy interpretation" control the first

inquiry.  Lucker, 223 F.3d at 814.  When interpreting the language of an insurance

policy, the court's primary goal is to "ascertain the parties' intentions as manifested

by the policy's terms."  Kvaerner, 908 A.2d at 897.  As the Pennsylvania Supreme

Court stated in Kvaerner,

9

> When the language of the policy is clear and unambiguous, we must give effect to that language.  Alternatively, when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy[] and controls coverage.

908 A.2d at 897 (internal citations omitted).  Nevertheless, the policy language "must not be tortured to create ambiguities where none exist."  HNI Corp., 2007 WL 1175636, at *36 (quoting Sikirica, 416 F.3d at 220).

Once the policy's coverage has been determined, the court must examine the underlying complaint to determine whether its factual allegations trigger coverage.  Given the broad nature of the duty to defend, the court must construe the factual allegations of the underlying complaint liberally and resolve all doubts as to coverage in favor of the insured.  Scottsdale Ins. Co. v. Westfall Twp., No. 3:04-CV-0994, 2006 WL 3000774, at *3 (M.D. Pa. Oct. 19, 2006) (citing Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co., 704 A.2d 665, 669 (Pa. Super. Ct. 1997)).  When so doing, the court should focus its analysis on the substance of the allegations rather than on "the particular cause of action that a complainant pleads."[9]  HNI Corp.,

---

[9] As stated by the Pennsylvania Superior Court in QBE Insurance Corporation v. M&S Landis Corporation,

> [T]o allow the manner in which the complainant frames the request for redress to control in a case such as this one would encourage litigation through the use of artful pleadings designed to avoid exclusions in liability insurance policies.

915 A.2d 1222, 1225 (Pa. Super. Ct. 2007).  This, in turn, would allow the insured to "receive coverage neither party intended and for which the insured was not charged."  Erie Ins. Exch. v. Fidler, 808 A.2d 587, 590 (Pa. Super. Ct. 2002).

2007 WL 1175636, at *37 (quoting Erie Ins. Exch. v. Muff, 851 A.2d 919, 926 (Pa.

Super. Ct. 2004)); see also Scottsdale, 2006 WL 3000774, at *3 (citing Mut. Benefit

Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999)).  In addition, the court should accept

all factual allegations of the underlying complaint as true because the duty to

defend is triggered even if such allegations are "groundless, false or fraudulent."

Scottsdale, 2006 WL 3000774, at *3 (quoting Britamco Underwriters v. Weiner, 636

A.2d 649, 651 (Pa. Super. Ct. 1994)); see also Tuscarora Wayne Mut. Ins. Co. v.

Kadlubosky, 889 A.2d 557, 561 (Pa. Super. Ct. 2005) ("It is the face of the complaint

and not the truth of the facts alleged therein which determines whether there is a

duty to defend.")

 "Where an insurer relies on a policy exclusion as the basis for its . . . refusal

to defend, the insurer has asserted an affirmative defense and, accordingly, bears

the burden of proving such defense."  Canal Ins. Co. v. Underwriters at Lloyd's

London, 435 F.3d 431, 435 (3d Cir. 2006) (quoting Madison Constr. Co. v.

Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999)).  When the allegations of the

underlying complaint "may or may not fall within the exclusion . . . , the insurer is

required to defend."  Air Prods. & Chems., Inc. v. Hartford Acc. & Indem. Co., 25

F.3d 177, 179 (3d Cir. 1994).  In other words, exclusions "are interpreted narrowly

against the insurer."  HNI Corp., 2007 WL 1175636, at *37 (citing Eichelberger v.

Warner, 434 A.2d 747, 750 (Pa. Super. Ct. 1981)).  Bearing the aforementioned

principles in mind, the court will address the policy exclusions asserted by Westport

*seriatim.*[10]

### A.   Funds Exclusion

The funds exclusion states that the policy shall not apply to any claim "based

upon, arising out of, attributable to, or directly or indirectly resulting from . . . the

failure to collect, pay, or return premiums." (Doc. 3, Ex. B at 64-65.) Based upon

this exclusion, Westport argues that it bears no duty to defend or indemnify BD&S

because the Frontier complaint "focuses on the narrow issue of what happened to

the premiums BD&S collected or should have collected." (Doc. 3, Ex. A ¶ 162.)

BD&S counters that Westport's characterization of the Frontier action "blatantly

ignores certain other claims for damages" contained in the Frontier complaint.

(Doc. 28 at 10.)

The court finds that the Frontier complaint clearly seeks damages beyond

the return of premiums. The complaint demands judgment in the following forms:

---

[10]   Both parties ask the court to consider evidence that goes "beyond the face
of the underlying complaint" when conducting this analysis. Air Prods., 25 F.3d at
179. Longstanding principles of Pennsylvania law prohibit the court from
entertaining such evidence. See id.; Coregis, 2006 WL 860710, *4; Wilson, 105 A.2d
at 304; Scopel, 698 A.2d at 607. But see Air Prods., 25 F.3d at 180 (permitting the
use of extrinsic evidence when establishing the application of "exceptions to
exclusions"). Accordingly, the court will limit its analysis to the facts as alleged on
the face of the Frontier complaint.

A.      awarding [Frontier] compensatory damages in an amount to be
        determined at trial but believed to exceed several million dollars;
B.      compelling BD&S to disgorge all premiums, fees, and other
        compensation it received in connection with the Program; and,
C.      granting [Frontier] such other and further relief as the Court deems
        just and proper under the circumstance.

(Doc. 3, Ex. A at 39.)  Nevertheless, Westport argues that this fact is immaterial
because the funds exclusion is not limited to claims where premiums are the *only*
damages sought.  (Doc. 35 at 6.)

While Pennsylvania courts have not directly addressed the breadth of the
funds exclusion, the court finds persuasive the reasoning of the Maryland Court of
Special Appeals in Utica Mutual Insurance Company v. Miller, 746 A.2d 935 (Md.
Ct. Spec. App. 2000).  In Miller, the gravamen of the underlying complaint was that
the insured had "failed to remit $326,480.12 in premiums collected on behalf of" an
insurer.  746 A.2d at 941.  The court stated that if the insurer's "sole cause of action"
had been based upon the insured's failure to remit the premiums collected, the
funds exclusion[11] would have removed the insurer's duty to defend.  Id. at 942.
However, the court noted that the insurer's complaint also alleged that the insured
had failed to turn over business records and to monitor business operations.  Id.
Because these claims did not fall within the express provisions of the funds
exclusion, the court held that the insurer had a duty to defend.  Id.

---

[11]  The exclusion in Miller precluded coverage for "a claim arising out of . . .
any liability for money received by an insured or credited to an insured for . . .
premiums."  746 A.2d at 940.

13

In the instant case, as in <u>Miller</u>, the gravamen of the underlying action is that

BD&S failed to remit premiums collected on behalf of Frontier.  (<u>See</u> Doc. 3, Ex. A

¶ 5.)  However, the complaint also alleges that BD&S failed to:  (1) "provide the

requisite underwriting information," (2) "cancel or non-renew policies [Frontier]

had identified as falling outside the controlling underwriting guidelines," and

(3) "provide an accounting of monies due and owing" to Frontier.  (Doc. 3, Ex. A

¶¶ 86-87, 129.)  Strictly construing the funds exclusion, the court finds that these

allegations do not fall within its express provisions.  <u>See</u> <u>HNI Corp.</u>, 2007 WL

1175636, at *37 (stating that all policy exclusions are to be "interpreted narrowly

against the insurer").  Accordingly, Westport's duty to defend survives application

of the funds exclusion.

### B.    <u>Intentional Acts Exclusion</u>

The policy provides coverage for wrongful acts, including "any negligent act,

error or omission."  (Doc. 3, Ex. B at 65.)  In contrast, the policy does not provide

coverage for any claim "based upon, arising out of, attributable to, or directly or

indirectly resulting from . . . intentional acts, including but not limited to acts of

*dishonesty, fraud, criminal conduct,* malice, or assault and battery."  (<u>Id.</u> at 64

(emphasis added)).  This intentional acts exclusion is grounded in the strong public

policy of Pennsylvania that a person should not profit from his or her wrongful acts.

<u>See</u> <u>Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.</u>, 432 F. Supp. 2d 488, 507

(E.D. Pa. 2006) ("[I]t contravenes the public policy of Pennsylvania to provide

insurance for intentional acts.") (citing <u>United States Auto. Ass'n v. Elitzky</u>, 517

A.2d 982, 986 (Pa. Super. Ct. 1984)).

In the instant case, Westport argues that the intentional acts exclusion

removes the duty to defend because the Frontier action clearly alleges that BD&S

engaged in dishonest and fraudulent conduct.  The crux of Frontier's allegations is

that:

> BD&S's [workers' compensation] program not only proved to be a complete
> debacle but it is now known to have provided the legitimate "cover" for a
> sprawling fraudulent scheme that victimized businesses in cities stretching
> from Hawaii to Massachusetts.
>
> This scheme, which is the subject of an ongoing federal criminal
> investigation, was perpetrated on BD&S's watch as [Frontier's] agent.
> Through that scheme, persons who had no authority to act on [Frontier's]
> behalf purported to have secured insurance policies that, in fact, [Frontier]
> never issued; collected millions of dollars in premiums and fees from
> unsuspecting businesses that were induced into believing they were insured
> under those non-existent policies; retained those monies for their own
> personal benefit; left scores of companies throughout the country without the
> workers' compensation coverage they required to operate legally; and left
> [Frontier] exposed to claims made on policies it never even issued.

(Doc. 3, Ex. A ¶¶ 3-4; <u>see also</u> <u>id.</u> ¶¶ 155-156.)

Nevertheless, BD&S argues that there are sufficient allegations of "acts and

omissions" and "mismanagement" in the Frontier action to take it outside of the

intentional acts exclusion.  (Doc. 28 at 11.)  In addition to the excerpt set forth

above, the complaint alleges that BD&S:  (1) mismanaged the workers'

compensation program, (2) "intentionally or negligently" failed to remit or collect

the required premiums, and (3) failed to "guard against the use of the Program as a

'cover' for an extensive fraudulent scheme."  (Doc. 3, Ex. A ¶¶ 167, 173, 177-181.)

Several courts have relieved insurers of their duties to defend where the acts alleged in the underlying complaints "could never have been performed negligently." See, e.g., Donegal Mut. Ins. Co. v. Bumhammers, 893 A.2d 797, 819-20 (Pa. Super. Ct. 2006) (denying coverage where insured intentionally shot several people); Fidler, 808 A.2d at 590 (denying coverage where student "threw [his classmate] against a wall and into a desk"); Donegal Mut. Ins. Co. v. Ferrara, 552 A.2d 699, 701 (Pa. Super. Ct. 1989) (denying coverage where insured kicked the plaintiff in the groin and caused severe injuries). Where, however, the allegations arguably sound in negligence, the duty to defend attaches. For example, our sister court in the Eastern District of Pennsylvania held that the duty to defend attached where the conduct alleged in the underlying complaint "could have been the result of a fraudulent scheme (intentional tort) or the consequence of poor business judgment (negligence)." MP III Holdings, Inc. v. The Hartford, Civ. A. No. 05-1569, 2006 WL 2645156, *10 (E.D. Pa. Sept. 14, 2006).

As in MP III Holdings, various aspects of BD&S's conduct in the instant case could have resulted from a fraudulent scheme or from poor business management. See id. Accordingly, the court finds that the intentional acts exclusion does not eliminate Westport's duty to defend.

### C.   **Personal Profit Exclusion**

The personal profit exclusion states that the policy shall not apply to claims that any "insured . . . gained, in fact, any personal profit or advantage to which he or she was not legally entitled." (Doc. 3, Ex. B at 46.) In support of its argument that

16

this exclusion removes the duty to defend, Westport points to the following

allegations of the Frontier complaint:

> [D]uring BD&S's watch as [Frontier's] agent, certain persons had become
> involved in the Program without [Frontier's] knowledge or consent.  These
> persons had grown frustrated with [Frontier's] refusal to rapidly expand the
> roster of PEOs and client companies it was willing to insure.
>
> . . .  Attempting to side-step [Frontier's] conservative approach, these persons
> fraudulently represented that they had secured non-existent coverage from
> [Frontier], induced numerous PEOs to pay premiums and other fees for
> coverage that did not exist, routed those funds to entities other than
> [Frontier] so that [Frontier] would not learn of the scheme, and then used all
> or a portion of those proceeds for their own *personal benefit*.

(Doc. 3, Ex. A ¶¶ 155-156 (emphasis added)).

The policy defines the term "insured" as the corporation itself, as well as the

corporation's:  (1) "officers, directors, and former officers and directors, but only

with respect to their duties as . . . officers and directors," (2) stockholders,

(3) "employees and former employees but only for acts within the scope of their

employment," and (5) "independent contractor[s] while acting within the scope of

their duties."  (Doc. 3, Ex. B at 63.)  In the instant case, the Frontier action alleges

only that "certain persons" appropriated premiums for their own personal benefit.

(Doc. 3, Ex. A ¶ 155.)  The complaint neither attributes these actions directly to

BD&S nor identifies the relationship of said "certain persons" to BD&S.  Without

such information, the court cannot determine whether those persons qualify as

insureds within the policy's definition.  See Brown & Lacounte, L.L.P. v. Westport

Ins. Corp., 307 F.3d 660, 662 (7th Cir. 2002) (interpreting a personal profit exclusion

with reference to the policy's definition of the term "insured").  Because the

personal profit exclusion applies only to claims that *an insured* gained a personal

profit, the court finds that Westport has not met its burden to prove the

applicability of the personal profit exclusion to the underlying action.  See Canal,

435 F.3d at 435 (3d Cir. 2006) (stating that the insurer bears the burden to prove the

applicability of a policy exclusion).

### D.      Other Insurance Exclusion

The other insurance provision states:

> Except as provided in the Exclusions in this "policy," if there is other
> insurance applicable to a "claim" covered by this "policy," this "policy" shall
> be deemed excess insurance over and above the applicable Limits of Liability
> of all such other insurance unless such other insurance is specifically written
> as excess insurance over the Limits of Liability provided in the "policy."

(Doc. 3, Ex. B at 53.)  Westport argues that it owes no duty to defend BD&S because

its policy provides "excess insurance over and above" a separate professional

liability policy issued to BD&S by General Insurance Company, Inc.  (Doc. 42 ¶ 30;

Doc. 45 ¶ 30.)

Other insurance provisions limit the extent of an insurer's liability when the

insured carries another policy that applies to the claimed loss.  Pac. Indem. Co. v.

Linn, 590 F. Supp. 643, 651 (E.D. Pa. 1984), aff'd, 766 F.2d 754 (3d Cir. 1985); see also

Covington Twp. v. Pac. Employers Ins. Co., 639 F. Supp. 793, 801 (M.D. Pa. 1986).

Other insurance provisions are "invoked only when the insured has made some

payment in discharge of a liability."  Linn, 590 F. Supp. at 652 n.10.  An insured's

duty to defend is "independent of liability and any limitations thereon."  Id.

Accordingly, other insurance provisions cannot remove an insurer's duty to defend, see id., and the provision has no effect upon Westport's duty in the instant case.

**IV.    Conclusion**

In accordance with the above discussion, the court will grant BD&S's motion for partial judgment on the pleadings (Doc. 23) and will deny Westport's motion for summary judgment (Doc. 29).  However, the court's decision regarding Westport's duty to defend has no bearing on the duty to indemnify, which "arises only if it is established that the insured's damages are actually covered by the terms of the policy." Drumheller, 185 F. App'x at 154.

An appropriate order will issue.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:        May 30, 2007

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WESTPORT INSURANCE CORPORATION,** | : | **CIVIL ACTION NO. 1:05-CV-1252** |
| | : | |
| | : | **(Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BLACK, DAVIS & SHUE AGENCY, INC.,** | : | |
| | : | |
| | : | |
| **Defendant** | : | |

## <u>ORDER</u>

AND NOW, this 30th day of May, 2007, in accordance with the accompanying

memorandum, it is hereby ORDERED as follows:

1.  Defendant's motion for partial judgment on the pleadings (Doc. 23) is GRANTED with respect to plaintiff's duty to defend Black, Davis & Shue Agency, Inc.

2.  The Clerk of Court is directed to defer the entry of judgment on this claim in favor of defendant Black, Davis & Shue Agency, Inc. and against plaintiff Westport Insurance Corporation until the resolution of all claims.

3.  Plaintiff's motion for summary judgment (Doc. 29) is DENIED in its entirety.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge